UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

        Plaintiff,

v.                                  Case No. 2:16-cv-49
                                  HON.  GORDON J. QUIST

UNKNOWN MAKELA,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Defendants David Makela, Timothy Lee, Daniel Pelkola, Dean Leece, and Billy Gooseberry.[1]  Defendants assert that they are entitled to qualified immunity and have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 57.)  Plaintiff has responded.  (ECF No. 69.)  This matter is ready for decision.

Plaintiff's claims arise from events that occurred while he was incarcerated at Marquette Branch Prison (MBP).  During his time at MBP, Plaintiff filed several grievances against prison employees.  On August 30, 2014, Defendant Lee "warned [Plaintiff] about filing complaints against MBP employees."  On December 17, 2014, Defendants Pelkola and Leece showed up at Plaintiff's cell around 7:00 am.  Although Plaintiff had already eaten breakfast, he went back to sleep in his bed.  Defendants Pelkola and Leece woke him up and told him that they were going to teach him a lesson.  Defendant Pelkola then threatened to plant some drugs on Plaintiff if he did not agree to stop filing grievances.  Plaintiff stood silently.  Shortly thereafter,

---

[1] The first name of each Defendant was taken from Defendants' motion.  (PageID.267.)  In addition, Defendant Pelker's name was misspelled in the complaint and his last name is spelled "Pelkola."

Defendant Lee arrived at Plaintiff's cell and threatened Plaintiff with segregation if he did not agree to stop filing grievances.  Plaintiff was then strip searched and taken to a different cell for two hours.  When Plaintiff returned to his cell, his typewriter and litigation manual were damaged.  In addition, some of Plaintiff's property—including legal papers, magazines, and pictures—was missing.  Christopher Reece, an inmate in a neighboring cell, told Plaintiff that he heard the sound of paper ripping and saw Defendants Leece and Pelkola exit the cell with a large garbage bag full of shredded paper.  Plaintiff subsequently filed a grievance against Defendants Pelkola, Leece, and Lee.  Defendant Makela was the respondent at Step I.  Plaintiff alleges that Defendant Makela lied during the grievance process.  He states that although Defendant Makela claimed to have interviewed Reece in the response, he never actually did.

On January 30, 2015, Defendant Lee stopped Plaintiff in the yard and conducted a body search.  Plaintiff alleges that the body search was in retaliation for Plaintiff filing a lawsuit on January 23rd.  Defendant Lee allegedly told Plaintiff that he had zero tolerance for prisoners who file lawsuits.  Defendant Lee then instructed Defendant Gooseberry to conduct a retaliatory strip search of Plaintiff in the yard.

Plaintiff further alleges that Defendants Lee, Makela, and Gooseberry entered into a conspiracy to have Reece assault him.  Because he feared for his safety, Plaintiff tried to request protection.  Defendant Lee refused this request.  On February 2, 2015, Plaintiff was involved in a fight with Reece.  Plaintiff was "gassed," taken to segregation, and received a misconduct ticket. Defendant Lee told Plaintiff that he would make sure that his property was messed with and that Plaintiff would be beaten worse the next time.  When Plaintiff returned to his cell, various items were missing including his 13-inch flat screen television and headphones.  Defendant Pelkola told Plaintiff that this was payback and that Plaintiff would not get his television back.

There is some confusion between the parties regarding the remaining claims in this case.  In the "Claims for Relief" section of Plaintiff's complaint, he listed several claims against each Defendant including retaliation, cruel and unusual punishment, equal protection, due process, and conspiracy under 42 U.S.C. §§ 1985; 1986.  After conducting an initial screening pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), the Court did not dismiss any of Plaintiff's claims and served the entire complaint on Defendants.

Defendants then moved for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies.  In a Report and Recommendation, the undersigned recommended that Defendants' motion be granted on all claims except: "Plaintiff's claims arising from the December 17, 2014, cell search and confiscation or destruction of property that resulted from that search against each Defendant and Plaintiff's claim that Defendants Pelkola and Leece caused the loss of his 13 inch flat screen[.]"  (ECF No. 25, PageID.191.)  Plaintiff objected.  On November 21, 2016, the Court issued an opinion stating that "Plaintiff's objection is without merit."  (ECF No. 31, PageID.211.)  However, the Court denied Defendants' motion "as to Plaintiff's claims against each named Defendant arising from the December 17, 2014 cell search and confiscation or destruction of property, and Plaintiff's claim that Defendants Pelkola and Lee caused the loss of his 13-inch flat screen, and Defendant Makela intentionally disregarded and failed to properly verify this grievance."  (ECF No. 32.)

Defendants now move for summary judgment on three claims: (1) a retaliation claim against Defendants based on the December 17th cell search; (2) a failure to investigate claim against Defendant Makela for his inadequate investigation as the respondent to Plaintiff's grievance regarding the missing television; (3) a § 1983 conspiracy claim based on the allegation that Defendants Lee, Makela, and Gooseberry conspired to have Plaintiff attacked.  In response,

Plaintiff first addresses the retaliation claim based on the December 17th cell search.  Next, Plaintiff states that the failure to investigate claim against Defendant Makela regarding the missing television should be dismissed because he is currently litigating this claim in *Alexander v. Lee et al.*, 2:16-cv-74 (W.D. Mich.), and mistakenly included the claim in this case.  Finally, Plaintiff states that the conspiracy claim against Defendants Lee, Makela, and Gooseberry alleging that they conspired to have Plaintiff attacked was previously dismissed by the Court.  Therefore, instead of addressing that conspiracy, Plaintiff addresses a 42 U.S.C. § 1985(3) conspiracy based on Defendants' conduct during the December 17th cell search.  Defendants did not file a reply brief.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. In addition, "[w]hen

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the

court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. *Id.* The court may consider either approach without regard to sequence. *Id.* at 236.

The first claim is relatively clear—both parties agree that Plaintiff asserts a retaliation claim against each Defendant based on the December 17th cell search. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The first element that Plaintiff must establish for his retaliation claim is that he was engaged in protected conduct. "[P]rotected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Because Plaintiff alleges that he was engaged in the protected conduct of filing grievances, the undersigned finds that Plaintiff satisfies the first element.

The second element that Plaintiff must establish for his retaliation claim is that Defendants took an adverse action against him. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. *Thaddeus-X*, 175 F.3d at 396, 398. Thus, the question is whether Defendants' actions were more than *de minimis* and capable of deterring a person of ordinary firmness from exercising future First Amendment rights. *Id.* A single cell search, standing alone, does not amount to an adverse action. *See Tate v. Campbell*, 85 F. App'x

413, 417 (6th Cir. 2003).  However, a cell search accompanied with other factors—such as the

confiscation of property—may amount to an adverse action.  *See Bell v. Johnson*, 308 F.3d 594,

605 (6th Cir. 2002) (two cell shakedowns accompanied with the confiscation of legal documents

and "medical diet snacks" were more than *de minimis* acts); *see also Reynolds-Bey v. Harris*, 428

F. App'x 493, 503-04 (6th Cir. 2011) (one or two searches accompanied by a racial slur and a

thinly-veiled threat were more than *de minimis* acts).

        In this case, Defendants argue that Plaintiff's retaliation claim should be dismissed

because the adverse acts were *de minimis*.  They contend that Plaintiff was subjected to a

"common" random cell search conducted by Defendants Leece and Pelkola and that no property

was removed or damaged during the search.[2]  However, Plaintiff's allegations establish that this

was more than a "common" search.  Defendant Pelkola threatened to plant drugs on Plaintiff if he

did not agree to stop filing grievances.  Plaintiff was strip searched and taken to a different cell for

two hours, and when he returned to his cell, his typewriter and litigation manual were damaged

and various legal papers, magazines, and pictures were missing.  Plaintiff's version of events is

further supported by Reece's Affidavit, in which he claims that he saw Defendants Leece and

Pelkola remove a trash bag full of paper from Plaintiff's cell.  In the opinion of the undersigned, a

reasonable jury could conclude that the cell search accompanied by a verbal threat, a strip search,

and the destruction/confiscation of property are more than *de minimis* acts and capable of deterring

person of ordinary firmness.

---

[2] To support the proposition that no property was taken from Plaintiff's cell during the search, Defendants point to the fact that they never issued Plaintiff a contraband removal form.  The MDOC policy requires a prison official to fill out this form and issue it to the inmate when any property confiscated.  Plaintiff concedes that he was never issued a contraband removal form but still asserts that property was taken from his cell.

Defendants also argue that Defendants Lee, Gooseberry, and Makela had no involvement in the December 17th cell search.[3]  As to Defendant Lee, Plaintiff alleges that Defendant Pelkola radioed to Defendant Lee at the beginning of the cell search.  Defendant Lee subsequently came to Plaintiff's cell and threatened to put him in segregation if he did not agree to stop filing grievances.  Thus, there is a question of fact as to whether Defendant Lee participated in the December 17th cell search.

However, Plaintiff does not specifically address whether Defendants Makela and Gooseberry were involved in the December 17th cell search.  Based on the allegations in the complaint, the undersigned finds that Defendants Gooseberry and Makela were not personally involved in the December 17th cell search and did not take any adverse acts against Plaintiff.  The only allegations against Defendant Gooseberry are that he conducted a strip search on January 30th and conspired to have Plaintiff attacked—which are not related to the December 17th cell search.  Similarly, the only allegation against Defendant Makela related to the December 17th cell search is that he was the respondent on the grievance and lied in response to this grievance.  Defendant Makela disputes that he lied.  Nonetheless, Defendant Makela's alleged misconduct during the grievance process does not amount to an adverse act.  *See Neal v. Ellis*, 2010 WL 5467485, at *5 (W.D. Mich. Dec. 30, 2010) ("[T]he failure to timely or accurately process a grievance does not amount to adverse action."); *Nolen v. Luoma*, 2008 WL 878920, at *9 (W.D. Mich. Feb. 11, 2008) ("Plaintiff's claim that [the defendant] "lied" on grievance responses fails to constitute an adverse action for purposes of a retaliation claim."), *report and recommendation adopted as modified*, 2008 WL 878769 (W.D. Mich. Mar. 28, 2008); *see also O'Brien v. Michigan Dep't of Corr.*, 592

---

[3] Although Defendants make this argument with respect to the adverse acts, this argument is similar to arguing that Plaintiff cannot state a § 1983 claim against Defendants Gooseberry, Makela, and Lee because they were not personally involved in the alleged constitutional violations.

F. App'x 338, 341 (6th Cir. 2014)  ("A defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983.")  Therefore, in the opinion of the undersigned, Plaintiff's retaliation claim arising from the December 17th cell search against Defendants Gooseberry and Makela should be dismissed.

The third element that Plaintiff must establish for his retaliation claim is that the adverse action was motivated, at least in part, by the protected conduct.  "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

Defendants argue that "Plaintiff has nothing but conclusory assertions or personal beliefs to support his claims of retaliation."  However, Plaintiff has alleged more than conclusory allegations; instead, he has alleged specific facts to establish that the December 17th cell search was motivated by the filing of grievances. On August 30, 2014, Defendant Lee "warned [Plaintiff] about filing complaints against MBP employees."  On the day of the cell search, Defendant Pelkola threatened to plant drugs on Plaintiff if he did not agree to stop filing grievances.  Defendant Lee also threatened to place Plaintiff in segregation if he did not agree to stop filing grievances.  In addition, Defendants argue that they commonly conduct cell searches and that they would have taken the same action regardless of Plaintiff's grievances.  However, as discussed above, the facts in this case establish that this was not a common random cell search. Therefore, in the opinion of the undersigned, Defendants Lee, Pelkola and Leece have failed to establish that they are entitled

to judgment as a matter of law on Plaintiff's retaliation claim based on the December 17th cell search.

Next, the undersigned addresses Plaintiff's claims related to the missing television and Defendant Makela's failure to investigate that grievance. Plaintiff states that he is litigating this claim in *Alexander v. Lee et al.*, 2:16-cv-74 (W.D. Mich.). Because it was included in this case by mistake, Plaintiff requests that the Court dismiss the claim. Defendants do not appear to contest a dismissal as they failed to file a reply brief. Therefore, the undersigned recommends that Plaintiff's claims related to the missing television be dismissed without prejudice.

The last claims in this case relate to multiple alleged conspiracies. Defendants addressed a conspiracy claim based on Defendants conspiring to have Plaintiff attacked. Plaintiff states that this claim was previously dismissed. It appears that Defendants may have believed that this claim still existed because the Court, in its opinion addressing the exhaustion issue, stated: "So Plaintiff exhausted the claim that those Defendants conspired to have another prisoner attack him as it relates to the December 17th cell search." (ECF No. 31, PageID.210.) However, in the opinion of the undersigned, this conspiracy is not related to the December 17th cell search. Plaintiff was attacked over a month after the December 17th cell search and the only Defendant allegedly involved in both incidents is Defendant Lee. Moreover, Plaintiff alleges that he was attacked because of a lawsuit he filed on January 23rd, which was not related to the December 17th cell search. Therefore, the undersigned agrees with Plaintiff's position—the claim that Defendants conspired to have Plaintiff attacked was previously dismissed by the Court.[4]

---

[4] Even assuming that this claim was not previously dismissed, the claim is without merit and should be dismissed. Plaintiff alleged that Defendants Lee, Gooseberry, and Makela, conspired to have Plaintiff attacked by Reece. Reece stated that he did not have any significant relationship with Defendants. Reece also stated that he attacked Plaintiff because of "prison stuff," which he later clarified to mean "he say/she say. Just, you know, stuff that go on in here." Simply, there is no evidence that Defendants Lee, Gooseberry, and Makela conspired to have Plaintiff attacked.

In addition, Plaintiff alleges that he asserted a conspiracy to retaliate claim against Defendants based on the December 17th cell search.  Although Plaintiff contends that this is a conspiracy under 42 U.S.C. § 1985(3), Plaintiff does not allege any facts to establish that he is a member of a protected class or that Defendants acted with a "discriminatory animus" based on a protected classification—as required to state a § 1985(3) conspiracy.  *See Webb v. United States*, 789 F.3d 647, 72 (6th Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The Supreme Court requires that § 1985 claims contain allegations of 'class-based, invidiously discriminatory animus.'")); *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  Therefore, to the extent Plaintiff asserts a § 1985(3) conspiracy, the undersigned recommends that the claim be dismissed.

However, because courts must liberally construe *pro se* filings, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the undersigned will construe Plaintiff's conspiracy claim as a civil conspiracy under 42 U.S.C. § 1983.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  In the opinion of the undersigned, a reasonable jury could find that Defendants Lee, Pelkola, and Leece agreed to violate Plaintiff's civil rights; shared in the conspiratorial objective; and committed an overt act in

furtherance of the conspiracy.[5]  However, Plaintiff does not offer any evidence to establish that Defendants Gooseberry and Makela were part of this conspiracy.

Finally, Defendants may still be entitled to qualified immunity if their conduct did not violate a right that was clearly established.  It is well-established that a prisoner cannot be retaliated against for filing grievances. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  Here, Defendants dispute that the cell search was conducted for a retaliatory purpose and deny making threats or destroying/confiscating any of Plaintiff's property.  Whether Defendants are entitled to qualified immunity in this case depends on the resolution of these factual disputes.  *See Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) ("The district court correctly found that summary judgment is inappropriate on this issue because there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the officers did acts which violate clearly established rights.").  Therefore, the undersigned recommends that the Court deny Defendants' request for qualified immunity at this time.

In summary, it is recommended that Defendants' motion for summary judgment (ECF No. 57) be denied as to Plaintiff's retaliation and conspiracy claims against Defendants Lee, Pelkola, and Leece arising from the December 17th cell search, and granted as to Plaintiff's retaliation and conspiracy claims against Defendants Makela and Gooseberry arising from the December 17th cell search.  It is further recommended that Plaintiff's claims arising from the confiscation of his television should be dismissed without prejudice.  Accordingly, Defendants Makela and Gooseberry should be dismissed from this case.

---

[5] The undersigned notes that this conspiracy claim is dependent on prevailing on the retaliation claim at trial.  *See Scott v. Stone*, 254 F. App'x 469, 474 (6th Cir. 2007).

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  October 18, 2017

  /s/ Timothy P. Greeley                              
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE